# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PATRICIA M.,                          )
                                      )
                Plaintiff,            )
                                      )
        v.                            )       1:24CV691
                                      )
FRANK J. BISIGNANO,                   )
Commissioner of Social                )
Security,                             )
                                      )
                Defendant.[1]         )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Patricia M., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 12 (Commissioner's

_____

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute for Leland C. Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brief)).  For the reasons that follow, the Court will remand this matter for further administrative proceedings.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 202-03), alleging a disability onset date of October 31, 2014 (see Tr. 202), the day after a previous ALJ decision approving a closed period of disability from July 24, 2012, to May 15, 2014 (see Tr. 70-91).  Upon denial of that application initially (Tr. 92-106, 124-32) and on reconsideration (Tr. 107-19, 134-41), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 142-43).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 36-69.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act (Tr. 15-34), and the Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 8-9, 198-201).  After Plaintiff filed an action for judicial review in this Court, see Martin v. Saul, No. 1:20CV450, Docket Entry 1 (M.D.N.C. May 21, 2020), the Court granted the Commissioner's consent motion to remand, see id., Docket Entries 15, 16 (M.D.N.C. Apr. 7, 2021) (Osteen, J.).  The Appeals Council thereafter remanded the case to an ALJ with instructions to 1) "resolve any apparent conflicts between the VE testimony and [Dictionary of Occupational Titles (DOT)]" (Tr. 953),

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 8 at 1.)

2

and 2) "fully consider the environmental limits resulting from [Plaintiff]'s headache disorder" (Tr. 954).

A new ALJ convened a hearing attended by Plaintiff, her attorney, and a VE (Tr. 914-44), after which the ALJ determined that Plaintiff did not meet the requirements for disability (Tr. 1309-38). Plaintiff again sought judicial review in this Court, see Martin v. Kijakazi, No. 1:22CV819, Docket Entry 1 (Sept. 29, 2022),[3] and the Court granted the Commissioner's consent motion to remand, see id., Docket Entries 16, 17 (M.D.N.C. Mar. 2, 2023). The Appeals Council subsequently remanded the matter, instructing the ALJ to apply the correct standard for evaluating opinion evidence for claims (such as Plaintiff's) filed before March 27, 2017 (see Tr. 1349), and to give further consideration to the opinion of treating physician Dr. Christine Hagen (see Tr. 1350).

A different ALJ held a third hearing, which Plaintiff, her attorney, and a VE attended (Tr. 1283-1308), and then issued a decision finding Plaintiff not disabled (Tr. 1256-82). Plaintiff again exercised her right under 20 C.F.R. § 404.984 to file the instant action for judicial review without requesting the Appeals Council to assume jurisdiction. (Docket Entry 1.)

_____

[3] "When a case is remanded by a district court and, in turn, to an ALJ for further proceedings, the decision of the ALJ constitutes the final decision of the Commissioner unless the Appeals Council thereafter assumes jurisdiction (1) at the claimant's request, or, (2) absent such request, in its discretion within 60 days after the ALJ's decision. See 20 C.F.R. § 404.984(a)-(d). Here, [Plaintiff] did not request review of the ALJ's decision by the Appeals Council, and the Appeals Council chose not to exercise jurisdiction; hence, [Plaintiff] returned directly to th[is C]ourt." Jackson v. Astrue, No. 09CV1290, 2010 WL 3777732, at *1 (E.D.N.Y. Sept. 21, 2010) (unpublished).

In denying Plaintiff's disability claim, the ALJ made the following findings (administratively final by reason of the prior remand under 20 C.F.R. § 404.984):

> 1.   [Plaintiff] last met the insured status requirements of the . . . Act on March 31, 2016.
>
> 2.   [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of October 31, 2014 through her date last insured of March 31, 2016.
>
> . . .
>
> 3.   Through the date last insured, [Plaintiff] had the following severe impairments: Migraine Headaches, Depressive Disorder with Hypersomnolence, Anxiety Disorder, Post-traumatic stress disorder (PTSD) and status post partial [sic] meningioma resection with residual effects.[4]
>
> . . .
>
> 4.   Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5.   . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [s]he can have no exposure to workplace hazards including unprotected heights, dangerous machinery or ladders, ropes or scaffolds.  She can have no exposure to extremes of heat or cold and no exposure to pulmonary irritants including chemical odors, fumes, smoke or gases, and no exposure to loud noise levels.  She is limited to simple, routine

---

[4] Records reflect that Plaintiff underwent "[r]ight parietal craniotomy and excision of meningioma" (Tr. 370), and that subsequent MRIs and CT scans did not show any evidence of a residual or recurrent meningioma (see Tr. 387, 441, 661-62).   Thus, the ALJ's use of the word "partial" appears to constitute a misspelling of "parietal."  (Tr. 1263.)

tasks and simple, work-related decisions, not at
production pace. She can interact frequently with
supervisors and coworkers, and only occasionally with the
public. She can adapt to occasional changes in the
workplace setting.

. . .

6. Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . .

10. Through the date last insured, considering
[Plaintiff]'s age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [she] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from October 31, 2014, the
alleged onset date, through March 31, 2016, the date last
insured.

(Tr. 1262-73 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given
those limitations, the Court will remand this case for further
administrative proceedings.

5

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

6

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[5] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These

_____

[5] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantially identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[6] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[6] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[7] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[8]

_____

[7] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[8] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the
(continued...)

9

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to adequately account for the vocationally limiting effects of Plaintiff's well-documented chronic migraine headaches in the RFC" (Docket Entry 11 at 5 (bold font and block formatting omitted)); and

2) "[t]he ALJ erred by failing to properly evaluate the medical opinion of Plaintiff's treating physician, Dr. Christine Hagen" (id. at 18 (bold font and block formatting omitted)).

The Commissioner contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 12 at 3-19.)

### 1. Impact of Migraine Headaches on RFC

In Plaintiff's first issue on review, she argues that "[t]he ALJ failed to adequately account for the vocationally limiting effects of Plaintiff's well-documented chronic migraine headaches in the RFC."  (Docket Entry 11 at 5 (bold font and block formatting omitted).)  In that regard, Plaintiff points to her testimony that "[s]he was having at least four or five migraines days per week . . . and would have to lie in bed . . . and turn off all the lights" (id. at 6 (citing Tr. 1298)), "that sunlight would hurt her eyes and that the fluorescent lighting in a store or office would cause her problems" (id. (citing Tr. 1290, 1300)), and that,

---

[8](...continued)
process, review does not proceed to the next step.").

"[w]hen [her] medication helped, she would still have migraines three or four times per week and, though they would not be as harsh, she would still have to lie down" (id. (citing Tr. 1299); see also id. at 7-9 (detailing "medical evidence of record supportive of [Plaintiff]'s testimony" (citing Tr. 79, 231-35, 360, 379-80, 545-47, 595-98, 600-02, 610-12, 623, 636, 638, 649, 662))). According to Plaintiff, "the ALJ d[id] not address the frequency of [Plaintiff]'s severe headaches," and "d[id] not [supply] an explanation connecting a recitation of the evidence to the RFC, which includes no allowance for absences, off-task time, or avoidance of exposure to bright lights" (id. at 10), in violation of Woody v. Kijakazi, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (unpublished), and Monroe v. Colvin, 826 F.3d 176, 189-90 (4th Cir. 2016) (see id. at 10-11). In addition, Plaintiff notes that "the [VE] testified that no more than two absences would be tolerated in a 30-day period and no more than 8 occurrences in a calendar year" (id. at 7 (citing Tr. 1305)), as well as "that only 10 percent off-task time would be tolerated, and that intolerance to sunlight and fluorescent lighting paired with additional unscheduled breaks would be work preclusive" (id. (citing Tr. 1305-06)). For the reasons that follow, Plaintiff has shown that the ALJ failed to adequately account for the limiting effects of Plaintiff's migraine headaches in the RFC, warranting remand.

11

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c). An ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014); however, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). Here, as the following discussion will show, the ALJ failed to adequately explain why he omitted limitations related to light exposure, time off-task, and absences from the RFC.

The ALJ here acknowledged Plaintiff's subjective complaints of "migraines [that] took over to the point where she could not eat, walk, or be in sunlight, prompting her to stop working" and "so

12

severe that she would need to lay [sic] down <u>in a dark area</u> and would wake up with her face swollen" (Tr. 1266 (emphasis added)), as well as her reports to her treating neurologist, Dr. Christine Hagen, of "headaches [] occurring intermittently, located in the right unilateral, retro orbital and occipital region that caused blurred vision, eye pain, nausea, phonophobia, <u>photophobia</u>, tinnitus, and vomiting" (Tr. 1267 (emphasis added)), and then found Plaintiff's subjective symptom reports "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (<u>id.</u>). The ALJ thereafter provided the following analysis to support that finding:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of . . . her symptoms, they are inconsistent because her migraines responded to medication over time, and she reported improvements with less headaches and well controlled pain. <u>MRI's [sic] showed stable findings that did not trigger medical concerns. Physical exams remained consistently normal, including normal attention and concentration, normal fund of knowledge, and orientation, as well as normal muscle bulk and tone, and normal gait</u>.
>
> . . .
>
> [Plaintiff]'s headaches waxed and waned over time but were mostly well controlled with medication. <u>She denied having headaches in May 2014</u>. Her headaches were well controlled with Topamax in November 2014. She was doing well with no side effects. She was doing better overall with less headaches in April 2015. Her migraines were doing better with the help of Topamax in April 2015. <u>Physical exams remained consistently normal in January 2016, including normal attention and concentration, normal fund of knowledge, and orientation, as well as normal muscle bulk and tone, and normal gait</u>. So while [Plaintiff]'s subjective complaints of headaches were consistent in the record, <u>those headaches do not appear</u>

13

to have resulted in impairment, objectively, of attention, concentration, fund of knowledge or orientation. There is also no evidence of objective physical impairment resulting from [Plaintiff]'s headaches.

Her migraines were better controlled in March 2016 with the help of Maxalt and a recent MRI showed stable findings. . . . Despite her symptoms, physical exams were normal, revealing normal gait, [and] normal cardiopulmonary function.

. . .

While [Plaintiff]'s headaches disorder and residual impact of her hemangioma [sic] are severe and could be expected to result in some level of pain and functional impairment, the degree of impairment alleged is not supported. This is because [Plaintiff] alleges consistent headaches occurring since childhood (middle school) and yet over that same period of time, [she] was able to attend school and focus to progress. She moved on to high school where she also progressed and ultimately graduated despite her headaches as well as other signs and symptoms. After high school, [Plaintiff] went to work part-time and then transitioned to full time work well above [substantial gainful activity] level for at least seven years. . . . [Plaintiff] was instructed to follow up with Dr. Hagen if her headaches did not improve but . . . there are periods of time in which [she] not only didn't allege lack of improvement but did not follow up at all. During that same period of time, there is no evidence of visits to emergency rooms or other urgent care providers for treatment of signs or symptoms.

[Transcript page 579] notes during [Plaintiff]'s August 2014 visit with Daymark that her "headaches have subsided." On the other hand, that same note did state that [Plaintiff] was "feeling overwhelmed by trying to take care of her sister, mother, and children." This note is particularly important because it contradicts [Plaintiff]'s testimony in the hearing that her headaches have been persistent for the period of 2014-2016 without relief and/or that they have existed since childhood without improvement. The note also demonstrates that [Plaintiff] retained the ability to perform her own activities of daily living as well as provide care for

14

her sister, children and her mother. <u>This was during the prior period of allowance wherein [Plaintiff] alleged being unable to function due to migraines</u>.

[Transcript page 736] from <u>May, 2014</u> noted [Plaintiff] as negative for headaches and with no focal neurological deficits. [Transcript page 757] from September 2016 noted [Plaintiff] as negative for headaches with no focal neurological deficits. [Transcript page 771] again notes [Plaintiff] visiting <u>Walkertown Family Medicine</u> for an ongoing acute <u>bilateral eye infection</u>. Again, [Plaintiff]'s exam and complaints were negative for headaches. . . .

Given all of the foregoing citations, facts and considering them in the context the [sic] overall record, the allegations of [Plaintiff] are not fully consistent. [Plaintiff] alleged in her application and has affirmed in testimony twice that her headaches are persistent that [sic] they occur "at least" 4-5 days each week and lasting [sic] all day. This contention is inconsistent with [Plaintiff]'s presentation and description to her headache treatment provider which notes intermittent headaches of varying degrees (at times improved and at time worsening). It is also inconsistent with her noted activities of being <u>independent</u> in activities of daily living while also provided [sic] care for her children, sister and mother. Given the alleged frequency of headaches the vast majority of every week that are so severe that [Plaintiff] testified she had to lay [sic] down, <u>the lack of reports of any headaches during her visits at Daymark are somewhat inconsistent</u>. Moreover, despite reporting headaches to the Novant Headache Clinic consistently, the provider's observations and reports of [Plaintiff] during the period of 2014-2016 do not support such severe symptoms. . . .

[Plaintiff] is limited to work that was not around hazards, loud noise, pulmonary irritants, or extreme temperatures, due to migraines . . . . <u>Physical exams were mostly unremarkable and MRI results were stable</u>.

(Tr. 1267-72 (emphasis added) (internal parenthetical citations omitted).) Plaintiff challenges the ALJ's findings regarding the intensity, persistence, and limiting effects of her migraine

15

headaches on three grounds, all of which, as explained in more detail below, have merit and warrant remand.

Plaintiff first faults the ALJ for failing to "address the frequency of [Plaintiff]'s severe headaches" and provide "an explanation connecting [the ALJ's] recitation of the evidence to the RFC, which includes no allowance for absences, off-task time, or avoidance of exposure to bright lights." (Docket Entry 11 at 10.) In that regard, Plaintiff notes that another judge of this Court remanded because "'the ALJ [did not] make findings regarding the frequency, duration, and intensity of [the p]laintiff's headaches" such that "the Court [wa]s unable to discern, without undue speculation, the logical bridge between the ALJ's summary of the medical record and her RFC determination as it relates to [the p]laintiff's headaches.'" (Id. (quoting Porterfield v. Berryhill, No. 1:18CV319, Docket Entry 18 at 7 (M.D.N.C. Aug. 6, 2019) (Webster, M.J.), recommendation adopted, Docket Entry 20 (M.D.N.C. Aug. 23, 2019 (Schroeder, C.J.)).) In Plaintiff's view, "[t]his holding is consistent with the holdings of other courts across the country." (Id. (citing Strasser v. Saul, Civ. No. 18C947, 2019 WL 2575000, at *3 (E.D. Wis. June 24, 2019) (unpublished), Metcalf v. Berryhill, No. 1:17CV184, 2018 WL 4620623, at *4 (W.D.N.C. Sept. 26, 2018) (unpublished), Najjar v. Commissioner of Soc. Sec., No. 16CV13472, 2017 WL 840421, at *2 (E.D. Mich. Mar. 3, 2017) (unpublished), and Funderburk v. Astrue, No. 2:10CV852, 2012 WL

16

904682, at *5 (M.D. Ala. Mar. 15, 2012) (unpublished)).) Plaintiff additionally points out that "the [United States Court of Appeals for the] Fourth Circuit has recently . . . observed [that] failing to make specific findings regarding how often a claimant would be absent form work due to the frequency and severity of their [sic] chronic headaches constitutes reversible error[.]" (Id. at 11 (citing Woody, 2023 WL 5745359, at *1).)

Here, Plaintiff testified at all three of her hearings that she had between three and seven severe migraine headaches per week during the relevant period (see Tr. 51 (at least four to five times per week), 923-28, 934 (between five and seven occurrences each week), 1298 (at least four to five severe migraines a week), 1299 (three to four headaches per week with medication)), that, among other things, sunlight and fluorescent or LED lights triggered her headaches and/or required her to wear sunglasses (see Tr. 47-48, 51 (sunlight, fluorescent lights, and LED lights), 923 (light), 932 (bright lights), 1290, 1296, 1300 (sunlight and fluorescent lights)), and that her headaches required her to lie down in the dark (see Tr. 56, 933, 1290, 1298). Although the ALJ's above-quoted discussion makes clear that he did not fully credit Plaintiff's report of four to five migraines per week (see Tr. 1271 ("[Plaintiff] alleged in her application and has affirmed in testimony twice that her headaches are persistent that [sic] they occur 'at least' 4-5 days each week and lasting [sic] all day.

17

This contention is inconsistent with [Plaintiff]'s presentation and description to her headache treatment provider which notes intermittent headaches of varying degrees (at times improved and at time worsening).")), the ALJ nevertheless failed to explain 1) the frequency and intensity of Plaintiff's migraines that the ALJ did find consistent with the evidence, and 2) why the RFC did not include limitations related to exposure to light, off-task time, and absence, given Plaintiff's consistent reports of headaches causing photophobia and the corresponding need to lie down in the dark (see Tr. 1266-72).

The Fourth Circuit's unpublished opinion in Woody helps to elucidate the error of ALJ here in failing to adequately explain how he accounted for Plaintiff's migraines in the RFC:

> [The plaintiff] contends the ALJ failed to adequately explain why the limitations included in the RFC sufficiently accounted for [the plaintiff's] headaches. Most significantly, she contends the ALJ erred by not making specific findings regarding how often [the plaintiff] would be absent from work due to the frequency and severity of her headaches. We agree. The [VE] testified a hypothetical person would be precluded from maintaining full time employment if she were absent more than once a month. The record shows that, even after receiving treatment that reduced the frequency of her headaches, [the plaintiff] still reported getting headaches about once a week. And although [she] told her physicians the severity of her headaches had lessened with treatment, the record does not establish whether her headaches nevertheless remained severe enough to cause her to be absent from work when they occurred. The ALJ did not make specific factual findings on that point. The ALJ's failure to reach an "express conclusion in the first instance" on the potentially dispositive issue of whether the frequency and severity of [the plaintiff]'s headaches would cause her to be absent from work more

18

> than once a month — or to explain how, despite any
> potential absences, the evidence supported [the ALJ's]
> finding that the limitations included in the RFC
> sufficiently accounted for [the plaintiff]'s impairments
> — is an error of law that necessitates remand.

Woody, 2023 WL 5745359, at *1 (emphasis added) (citing Dowling v. Commissioner of Soc. Sec. Admin., 986 F.3d 377, 388 (4th Cir. 2021), and Thomas v. Berryhill, 916 F.3d 307, 311-12 (4th Cir. 2019)).

Similarly, here, the VE testified that employers would tolerate only up to 10 percent off-task time and eight absences in a year (see Tr. 1305) and, "although [Plaintiff] told her physicians the severity of her headaches had lessened with treatment, the record does not establish whether her headaches nevertheless remained severe enough to cause her [to need limited exposure to light and/or] to be [off-task or] absent from work when they occurred[, and t]he ALJ did not make specific factual findings on that point," Woody, 2023 WL 5745359, at *1; see also John F. M. v. Kijakazi, No. 1:23CV126, 2023 WL 6057500, at *17 (D.S.C. Sept. 18, 2023) (unpublished) ("[The ALJ] failed to resolve conflicting evidence as to the frequency and duration of [the p]laintiff's migraines and their limiting effects. The record reflect[ed the p]laintiff's reports to his medical providers of migraines that occurred as often as daily and as infrequently as twice a month . . . Assuming the ALJ found [the p]laintiff's migraines were resolved by taking Imitrex and a nap, [the ALJ] did not

explain how often and how long [the plaintiff] would be incapacitated and how this would affect his ability to complete a normal workday and workweek. [The p]laintiff testified . . . that if he took medication immediately upon noticing his sinuses starting to constrict, his migraine might last only a few hours, but if he waited to take his medicine until the light and noise started to bother him, he would be down for at least eight hours. Even if [the p]laintiff required only a few hours of rest away from the workstation when experiencing a migraine, he would still be off-task for some portion of the workday."); <u>Myers v. Saul</u>, No. 1:20CV420, Docket Entry 16 at 8 (M.D.N.C. July 2, 2021) (unpublished) (Webster, M.J.) ("[T]he ALJ appears to endorse [the p]laintiff's testimony that she is sensitive to light, noise, and odors, but then - without adequate explanation - only includes a noise limitation in the RFC.  This alone is reversible error requiring a remand." (internal citation omitted)), <u>recommendation adopted</u>, Docket Entry 18 (M.D.N.C. July 20, 2021) (Biggs, J.).

The Commissioner points to "the ALJ['s] reli[ance] on Plaintiff's ability to perform daily activities" (Docket Entry 12 at 10), such as "car[ing] for her three children whom she helped with homework and drove to school," "car[ing] for her personal needs, shopp[ing] in stores, prepar[ing] meals, manag[ing] her finances, and perform[ing] household chores like cleaning, ironing, and washing laundry," as supportive of the RFC (<u>id.</u> at 11 (citing

20

Tr. 230-34, 1264)).[9]  Although an ability to engage in a wide range of activities might undermine a claimant's subjective report that an <u>ongoing</u> impairment limited her ability to function, i.e., a claimant's consistent ability to shop in a store for two hours might undermine her testimony that constant, unrelenting back pain limited her to 15 total minutes of walking in an eight-hour day, that ability carries much less significance when applied to <u>intermittent</u> impairments like Plaintiff's migraine headaches.

Here, the ALJ failed to acknowledge the possibility that Plaintiff engaged in the activities cited by the ALJ on days when Plaintiff did not experience a severe migraine that required her to lie down in a dark room.  <u>See</u> <u>Andreha U. v. Kijakazi</u>, No. 1:21CV302, 2022 WL 4465591, at *11 (D. Idaho Sept. 26, 2022) (unpublished) ("[T]he ALJ's reference to [the plaintiff]'s reported physical activities do not supply the [c]ourt with any further insight into the ALJ's reasoning.  The ALJ noted that [the plaintiff] was independent in all activities of daily living, could walk up to four miles a day, and reported playing Frisbee golf. However, the ALJ did not explain how these activities contradict

_____

[9] Plaintiff consistently indicated that she needed assistance from her mother, sister, and son to complete these activities (<u>see</u> Tr. 46-47, 57-58, 60, 230-31, 233, 930-31), which the ALJ failed to acknowledge in his discussion of the RFC (<u>see</u> Tr. 1270 ("[Plaintiff] retained the ability to perform her own activities of daily living"), 1271 (deeming Plaintiff "<u>independent</u> in activities of daily living" (emphasis added))).  That failure further weakens any support Plaintiff's daily activities provided for the ALJ's RFC.  <u>See</u> <u>Woods</u>, 888 F.3d at 694 ("An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." (italics in original)).

[the plaintiff]'s reports of frequent migraine headaches accompanied by pain, nausea, vomiting, blurred and double vision. . . . [The plaintiff] testified that, when she is suffering a migraine, she is unable to engage in any activity – indeed, she stated in both headache questionnaires that headache symptoms required her to lie in bed with the lights off until symptoms abate. Presumably, when [the plaintiff] is not experiencing a migraine, she would be able to perform activities of daily living and engage in physical activity. . . . But, the ALJ failed to discuss how the intermittent nature of [the plaintiff]'s migraines conflicted with her daily activities on days when she was not experiencing a migraine. Nor does the ALJ's reasoning address the heart of the issue, which concerns absenteeism related to migraine headache symptoms."); Colie v. Saul, No. 4:18CV107, 2019 WL 4619517, at *7 (E.D.N.C. Aug. 13, 2019) (unpublished) ("While [the] plaintiff's migraines could plausibly prevent her from performing certain of the[ daily] activities [relied on by the ALJ] when [the plaintiff] is experiencing migraines, it is less clear that she would be prevented from performing them . . . on a continuous basis due to her migraines given their intermittent nature. [ A]ccording to [the] plaintiff's own accounts, she is migraine free about 20 days of each month."), recommendation adopted in part, rejected in part on other grounds, 2019 WL 4580371 (E.D.N.C. Sept. 20, 2019) (unpublished); Biller v. Astrue, No.

22

1:09CV1763, 2010 WL 5481746, at *8 (N.D. Ohio Dec. 8, 2010) (unpublished) ("[I]t is not clear how [the p]laintiff's daily activities were inconsistent with her alleged disabling migraine headache pain. The ALJ explained that [the p]laintiff's ability to perform daily household chores, care for five children, drive, shop, and handle finances were extensive and belied [the p]laintiff['s] allegations of disabling pain. [The p]laintiff['s] daily activities, however, were not necessarily inconsistent with her allegations. Indeed, [the p]laintiff testified that she could care for herself only as long as she did not suffer a migraine, that she suffered dysfunction from her migraines two to three times a week, and, when she suffered migraines, her parents took care of her children. The ALJ should have explained how these daily activities . . . were inconsistent with being disabled at least three days a week." (internal quotation marks and citations omitted), recommendation adopted, 2011 WL 9187 (N.D. Ohio Jan. 3, 2011) (unpublished). Thus, the ALJ's reliance on Plaintiff's daily activities does not sufficiently explain the absence of limitation on exposure to light and allowances for off-task time and absence in the RFC.[10]

---

[10] The Commissioner also notes that the ALJ relied on Plaintiff's report "that she was 'feeling overwhelmed by trying to take care of her sister, mother, and children'" in fashioning the RFC. (Docket Entry 12 at 11 (citing Tr. 579, 1270).) Beyond the possibility that Plaintiff might not have had much choice regarding the need to care for those individuals, the fact that she felt "overwhelmed" by merely "trying" to provide such care does little to undermine her allegations of disabling headaches.

23

The Commissioner additionally notes that "the ALJ relied on the [reconsideration-level] state agency [medical] consultant['s] prior administrative medical findings" in formulating the RFC. (Docket Entry 12 at 10 (citing Tr. 1268).)  In that regard, the Commissioner observes that "[t]he ALJ explained that he credited the opinion of . . . the state agency [medical consultant] who found Plaintiff could tolerate occasional postural activities with no concentrated exposure to hazards," but "included additional non-exertional limitations ( . . . limited exposure to loud noise, pulmonary irritants, and extreme temperatures) to account for Plaintiff's headaches."  (Id. (citing Tr. 1268).)[11]  Although the consultant did not include limitations on light exposure, off-task time, or absences in her RFC opinion (see Tr. 116-17 (restricting even moderate exposure to hazards because of "[s]edation related to [h]eadache medications")), the consultant did not offer any explanation for the lack of light exposure, off-task time, or absence limitations (see Tr. 117), despite finding Plaintiff's migraines a severe impairment (see Tr. 113) and acknowledging the prior ALJ's RFC which included limitations on exposure to direct sunlight (see Tr. 112; see also Tr. 84).  Thus, the unexplained

_____

[11] Although the Commissioner maintains that the ALJ also limited Plaintiff to "occasional changes, no fast-paced work, [and] social limitations . . . to account for Plaintiff's headaches" (Docket Entry 12 at 10), the ALJ made clear he included those limitations in the RFC to account for Plaintiff's mental impairments, and not her headaches (see Tr. 1272 ("[Plaintiff] is limited to simple tasks and decisions, no production pace, occasional workplace changes, frequent contact with coworkers and supervisors, and occasional public contact, due to PTSD, anxiety and depression . . . ." (emphasis added))).

24

absence of limitations on light exposure, off-task time, and absences in the consultant's RFC provides little support for the ALJ's omission of such limitations from the RFC. See Frank G. v. Commissioner of Soc. Sec., No. 5:17CV103, 2019 WL 430887, at *7 (D. Vt. Feb. 4, 2019) (unpublished) ("[T]o the extent that the Commissioner claims the [state agency] physicians' opinions were consistent with a finding that [the p]laintiff could perform frequent head movements, the opinions were consistent with this conclusion only to the extent that they were silent on the issue." (emphasis added) (internal quotation marks and ellipsis omitted)).

Second, Plaintiff challenges the ALJ's repeated reliance on normal imaging and "benign physical examinations . . . when discussing the consistency of [Plaintiff]'s statements" (Docket Entry 11 at 12 (citing Tr. 1267)) and "[a]t the end of [the ALJ's] analysis" (id. at 12-13 (citing Tr. 1272)). According to Plaintiff, "it does not matter that [Plaintiff]'s MRIs are 'unremarkable[,]'" because "migraines are not generally detectable through objective testing or physical examinations." (Id. at 13 (citing Eden v. Berryhill, No. 2:16CV3703, 2017 WL 1404380, at *19 (S.D.W. Va. Mar. 28, 2017) (unpublished), recommendation adopted, 2017 WL 1398341 (S.D.W. Va. Apr. 18, 2017) (unpublished), Harrington v. Colvin, No. 7:15CV20, 2016 WL 320144, at *4 (E.D.N.C. Jan. 4, 2016) (unpublished), recommendation adopted, 2016 WL 311284 (Jan. 25, 2016) (unpublished), and Taylor v. Astrue, No. 7:10CV149,

25

2011 WL 2669295, at *4 (E.D.N.C. May 23, 2011) (unpublished), recommendation adopted, 2011 WL 2669290 (Jul. 7, 2011) (unpublished)).) Thus, Plaintiff argues, "[t]he AlJ's reliance on normal clinical examinations was improper." (Id. (citing Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 97-98 (4th Cir. 2020) ("ALJs may not rely on objective medical evidence (or the lack thereof) - even as just one of multiple factors - to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence."), and Strickland v. Barnhart, 107 F. App'x 685, 689 (7th Cir. 2004) ("The ALJ [] appears to have thought, incorrectly, that the [normal] neurological test results somehow undercut [the plaintiff]'s claims that her migraines are severely painful. In fact, nothing in the record suggests that these tests can confirm either the existence of migraines or their likely severity.")).)

As the ALJ's discussion quoted above shows, he relied multiple times on "stable" MRIs and "consistently normal" physical examinations, "including normal attention and concentration, normal fund of knowledge, and orientation, as well as normal muscle bulk and tone, and normal gait" to discount the intensity, persistence, and limiting effects of Plaintiff's migraines. (Tr. 1267; see also Tr. 1268-69, 1272.) Although a stable MRI of Plaintiff's brain might have demonstrated that her meningioma had not recurred, as Plaintiff points out (see Docket Entry 11 at 13-14), it would not

26

have had any bearing on the severity of her migraine headaches. Not only did Plaintiff testify that her migraines both pre-existed and post-dated the resection of her meningioma (see Tr. 51-52, 922-23, 1290-91), but the SSA expressly instructs ALJs that "physicians may use [MRIs] to rule out other possible causes of headaches . . . meaning that an unremarkable MRI is consistent with a primary headache disorder diagnosis" such as migraine headaches, and that "imaging . . . is not required for a primary headache disorder diagnosis," Social Security Ruling 19-4p, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635, at *4 (Aug. 26, 2019) (emphasis added). Furthermore, although Plaintiff at times indicated that her migraines and/or medications to alleviate her migraines affected her ability to concentrate (see Tr. 57-59, 235, 926, 1291), she primarily complained of pain, nausea, vomiting, phonophobia, and photophobia (see, e.g., Tr. 47-48, 51, 230, 232-33, 923, 1298-1300). Thus, findings of normal attention, concentration, orientation, and fund of knowledge had little probative force to detract from Plaintiff's reports of disabling headaches. Moreover, the ALJ entirely failed to explain how normal "cardiopulmonary function," muscle tone/bulk, and gait (Tr. 1267) undermined in any way Plaintiff's consistent complaints of debilitating headaches, see Creel v. O'Malley, No. 5:23CV1742, 2024 WL 4186662, at *11 (D.S.C. Apr. 19, 2024) (unpublished) ("The ALJ also found [a physician]'s opinions

27

regarding [the p]laintiff's postural limitations inconsistent with [the physician's] treatment records indicating that [the p]laintiff exhibited full (5/5) strength of the upper and lower extremities, intact sensation, a normal gait, and normal reflexes. However, these physical findings do not necessarily negate the need for limitations because of [the p]laintiff's migraines." (internal quotation marks and parenthetical citation omitted)), recommendation adopted sub nom. Angela C. v. O'Malley, 2024 WL 3648190 (D.S.C. Aug. 5, 2024) (unpublished); Robinson v. Colvin, 31 F. Supp. 3d 789, 792-93 (E.D.N.C. 2014) (finding that "ALJ's reliance on normal strength and reflexes to discount [a physician's] opinion would have no bearing on [the] plaintiff's limitations due to migraine headaches").[12]

Third, Plaintiff contends that the ALJ both "oversimplifi[ed]" and "cherrypicked" the evidence of record to support his conclusion "that [Plaintiff]'s migraine headaches were controlled with medication." (Docket Entry 11 at 15 (citing Tr. 1263, 1267).) In Plaintiff's view, she "never experienced lasting relief from her

_____

[12] The Fourth Circuit has not extended its holding in Arakas (prohibiting ALJs from considering objective evidence to discount a claimant's subjective complaints regarding a disease that does not produce objective evidence, see Arakas, 983 F.3d at 97-98), to migraine headaches, and SSR 19-4p makes clear that objective findings exist to corroborate a diagnosis of migraine headaches, see SSR 19-4p, 2019 WL 4169635, at *4-5 (noting that ALJ "establish[es] a primary headache disorder as a [medically determinable impairment] by considering objective medical evidence (signs, laboratory findings, or both) from an [acceptable medical source]" (emphasis added)). Thus, the ALJ's error here lies not in relying on objective medical evidence as one basis to discount the intensity, persistence, and limiting effects of Plaintiff's migraines, but in the ALJ's failure to explain why the particular objective findings he highlighted, i.e., normal muscle tone/bulk, cardiopulmonary function, and gait (see Tr. 1267), diminished the consistency of Plaintiff's subjective reports.

headaches[ and], even at her best control, [she] appear[ed] to have
been experiencing migraine headaches at a disabling rate." (Id.
(citing Tr. 600-01).) Plaintiff further argues that "the
ALJ . . . selectively cherrypicked information from within the
individual notes he cite[d] . . . rather than considering the
broader context contained in the individual treatment notes." (Id.
(citing Tr. 1267 (in turn citing Tr. 600, 614, 616, 625, 627,
736).) According to Plaintiff, "[t]his is the same sort of
cherrypicking of the evidence that the [Fourth Circuit has] found
to be problematic." (Id. at 16 (citing Shelley C. v. Commissioner
of Soc. Sec. Admin., 61 F.4th 341, 362 (4th Cir. 2023), Arakas, 983
F.3d at 98-99, and Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir.
2017)).)

Plaintiff's argument regarding the ALJ's "oversimplification"
of the record by finding "[Plaintiff]'s migraine headaches
controlled with medication" (id. at 15 (citing Tr. 1267)) strikes
at the heart of the ALJ's failure of explanation in this case. As
discussed above, the ALJ found Plaintiff's testimony that "her
migraines occurred at least 4-5 times a week and last[ed] until the
next day . . . inconsistent with [her] reports of intermittent
headaches to Dr. Hagen." (Tr. 1270.) The ALJ, however, failed to
explain how even intermittent, severe migraine headaches occurring
six times in 28 days at their best level of control during the
relevant period (see Tr. 601), and still requiring Plaintiff to lie

down in a dark room (see Tr. 1299), would not cause Plaintiff to need limits on her exposure to light and/or to experience off-task time or absence from work.

The ALJ also relied on Plaintiff's reports to her providers of no headaches (or fewer headaches) without adequately considering either the chronology or the context of the applicable treatment notes. For example, the ALJ observed that, "[g]iven the alleged frequency of headaches the vast majority of every week that are so severe that [Plaintiff] testified she had to lay [sic] down, the lack of reports of any headaches during her visits at Daymark are somewhat inconsistent." (Tr. 1271 (emphasis added).) First, and most significant, all of Plaintiff's treatment visits at Daymark preceded her alleged onset date in this case of October 31, 2014. (See Tr. 409-34, 454-520, 577-594 (documenting treatment from Nov. 20, 2012, to Aug. 21, 2014).) Indeed, the treatment visit in August 2014 on which the ALJ specifically focused (see Tr. 1270 ("[Transcript page 579] notes during [Plaintiff]'s August 2014 visit with Daymark that her 'headaches have subsided.'") (emphasis added)) occurred during a period covered by the prior ALJ's decision and in which the ALJ found Plaintiff had experienced medical improvement in her headaches and therefore no longer qualified as disabled (see Tr. 70-91). Accordingly, this treatment record, while inconsistent with Plaintiff's testimony that her headaches "existed since childhood without improvement" (Tr. 1270

30

(referencing Tr. 1290-91, 1297)), does not detract from the consistency of Plaintiff's reports of disabling headaches during the relevant period in the instant case, i.e., from October 31, 2014, to March 31, 2016.  Second, contrary to the ALJ's reliance on Plaintiff's "lack of reports of any headaches during her visits at Daymark" (Tr. 1271 (emphasis added)), the record reflects that Plaintiff complained of migraine headaches on multiple occasions during her visits to Daymark (see Tr. 458, 461, 467, 474, 479, 486, 495, 505).

The ALJ also noted that Plaintiff denied having headaches during three treatment visits.  (See Tr. 1270 (citing Tr. 736 (May 28, 2014), 757 (Sept. 13, 2016), 771 (Sept. 14, 2016)).)  The May 2014 visit involves a complaint of a breast lump to Plaintiff's primary care provider (see Tr. 736) and occurred during the period when the prior ALJ found Plaintiff's headaches had improved and she no longer qualified as disabled (see Tr. 70-91).  Moreover, an acute bout of conjunctivitis prompted the September 2016 visits to Plaintiff's primary care provider.  (See Tr. 757, 771.)  As Plaintiff received treatment for her headaches from a neurologist at a headache clinic and not from her primary care provider, her lack of headache complaints at these visits to address other acute medical concerns does not provide much if any support for the absence of limitations in the RFC related to light exposure, off-task time, and absence.

31

In light of the ALJ's above-described failure to sufficiently explain the lack of limitations in the RFC relating to exposure to light, off-task time, and absence to account for Plaintiff's migraine headaches, the Court will order remand.

## 2. Assessment of Dr. Hagen's Opinions

Plaintiff's second and final assignment of error maintains that "[t]he ALJ erred by failing to properly evaluate the medical opinion of Plaintiff's treating physician, Dr. [] Hagen." (Docket Entry 11 at 18 (bold font and block formatting omitted).) More specifically, Plaintiff challenges the ALJ's decision to afford only partial weight to Dr. Hagen's opinions that Plaintiff's migraine headaches would cause her to need unscheduled 15 to 30 minute breaks during the workday and to miss work approximately four days per month. (Id. (citing Tr. 597-98, 1269).) In Plaintiff's view, "the relevant evidence . . . does not appear to be inconsistent with th[ose] opinion[s,] as Dr. Hagen repeatedly noted [Plaintiff] was having more than four severe headaches per month during the relevant time period." (Id.)

In view of the Court's finding that Plaintiff's first issue on review warrants remand, and the fact that the ALJ, upon remand, must also 1) expressly discuss the frequency and severity of Plaintiff's migraine headaches that the ALJ finds consistent with the evidence, 2) re-evaluate the medical opinions of record (including Dr. Hagen's) in light of the ALJ's reassessment of the

frequency and severity of Plaintiff's migraines, and 3) determine whether Plaintiff's migraine headaches require limitations on light exposure and allowances for off-task time and/or absence in the RFC, the Court will decline to address Plaintiff's arguments directed at the ALJ's prior, now-moot assessment of Dr. Hagen's opinions.

### III. CONCLUSION

Plaintiff has established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED**, and that this action is **REMANDED** under sentence four of 42 U.S.C. 405(g) for further administrative proceedings, to include an express discussion of 1) the frequency and severity of Plaintiff's migraine headaches that the ALJ finds consistent with the evidence, and 2) whether Plaintiff's migraine headaches require limitations on light exposure and allowances for off-task time and/or absence in the RFC.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 22, 2025

33